IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| AD ADVERTISING DESIGN, INC., d/b/a/ AD CREATIVE,<br><br>Plaintiff,<br><br>vs.<br><br>SENTINEL INSURANCE COMPANY, LIMITED,<br><br>Defendant. | CV 17-140-BLG-TJC<br><br>**ORDER REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT** |

Plaintiff Ad Advertising Design, Inc., doing business as Ad Creative ("Ad Design") filed this action against Defendant Sentinel Insurance Company, Limited ("Sentinel") seeking declaratory judgment that a business owners' policy issued by Sentinel provides coverage for monetary losses Ad Design suffered as a result of a fraudulent email scheme. (Doc. 16.)

Presently before the Court are Ad Design's Motion for Summary Judgment, and Sentinel's Cross-Motion for Summary Judgment.[1] (Docs. 17, 31.) The motions are fully briefed and ripe for the Court's review.

---

[1] Sentinel also filed a Motion to Allow Discovery under Rule 56(d). (Doc. 21.) The motion is **DENIED** as **MOOT**. At this point, the discovery deadline has passed, and the parties have had an adequate opportunity to fully brief the cross-motions for summary judgment with the benefit of discovery.

1

Having considered the parties' submissions, the Court finds Ad Design's Motion for Summary Judgment should be **GRANTED in part**, and Sentinel's Motion for Summary Judgment should be **DENIED in part**.

I.  BACKGROUND

   A.  Factual Background[2]

Sentinel issued a Business Owner's Policy to Ad Design, Policy No. 41 SBA FV3465 SC, which was valid for the period 2/15/2016 to 2/15/2017 (the "Policy"). Ad Design was the victim of a fraudulent email scheme between September 15, 2016 and October 6, 2016. On four occasions during that period April Logulo, Operations Manager at Ad Design, received an email purportedly from Ad Design's president, Eric Finstad. The emails requested that electronic payments in the amount of $31,832.00, $24,376.00, $28,746.00, and $30,642.00, respectively, be sent to a designated bank account. Believing the emails were legitimate and the requests were to satisfy a vendor, Ms. Logulo submitted written requests to Western Security Bank to transfer the money out of Ad Design's account to the designated bank account. The total amount transferred in the four transactions was $115,595.00. After the fourth payment, Ad Design determined the emails from

---

[2] The background facts are taken from the parties' submissions, including Ad Design's Statement of Undisputed Facts (Doc. 19), Sentinel's Statement of Disputed Facts and Statement of Additional Facts (Doc. 28), Sentinel's Statement of Undisputed Facts (Doc. 33), and Ad Design's Statement of Disputed Facts (Doc. 38). The facts are undisputed, unless otherwise indicated.

2

Mr. Finstad were fraudulent. Unfortunately, Ad Design was not able to recover any of the money.

Ad Design filed a claim with Sentinel seeking coverage for the loss of the money. On September 6, 2017, Sentinel denied the claim, finding the Policy excluded coverage under a "False Pretense" exclusion.

B.   Procedural Background

On September 11, 2017, Ad Design filed the instant action in the Montana Thirteenth Judicial District Court, Yellowstone County, Montana, seeking a declaration that the Policy provides coverage for its claim. (Doc. 1.) On October 20, 2017, Sentinel removed the case to federal court based on diversity jurisdiction under 28 U.S.C. § 1441(b). (*Id.*) On December 28, 2017, Ad Design filed an Amended Complaint. (Doc. 16.) The Amended Complaint seeks "a declaration that the Policy provides coverage for the four forgery occurrences described herein," and for a judgment that "Sentinel is obligated under the policy to pay benefits according to the terms and conditions of the policy, less applicable deductibles." (Doc. 16 at 3-4). The Amended Complaint also requests attorney fees and costs, together with prejudgment interest. *Id.* at 4.

On January 8, 2018, Ad Design filed a motion for summary judgment on the issue of whether there is insurance coverage for its loss under the Policy. (Doc. 17.) Ad Design asserts its claim is covered under the Monies and Securities,

Forgery and Computer Fraud Coverages in the Policy. Ad Design further argues that the "False Pretense" exclusion in the policy does not apply because that exclusion is limited to physical losses. Ad Design asserts the loss of money from its bank account was not a physical loss. Finally, Ad Design asserts that the amount of the loss covered under the policy is $80,000.00. Nevertheless, it contends to be entitled to recover the full amount of its loss, $115,596.00, because Sentinel breached the insurance contract.

On April 6, 2018, Sentinel filed a cross-motion for summary judgment, seeking a ruling that the False Pretense exclusion in the Policy precludes coverage. (Doc. 31.) Sentinel argues Ad Design physically lost money that it was induced to voluntarily part with by a fraudulent scheme. Sentinel further argues that if Ad Design's loss is not considered to be a physical loss, then the loss falls wholly outside the Policy, which only covers physical loss or physical damage. Sentinel also argues that the Money and Securities, Forgery, and Computer Fraud provisions do not provide coverage for Ad Design's loss. Finally, Sentinel asserts that even if the loss is covered, the covered loss would be limited to $20,000.00.

## II. DISCUSSION

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as

4

a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id*.

As noted, the Court's jurisdiction over this action is based on diversity of citizenship. Thus, the Court must apply the substantive law of Montana. *Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002). In Montana, the interpretation of an insurance contract is a question of law. *Scentry Biologicals, Inc. v. Mid-continent Cas. Co.*, 319 P.3d 1260, 1264 (2014). A court interpreting an insurance policy is to read the policy as a whole and, to the extent possible, reconcile the policy's various parts to give each meaning and effect. *O'Connell v. Liberty Mut. Fire Ins. Co.*, 43 F.Supp.3d 1093, 1096 (D. Mont. 2014) (*citing Newbury v. State Farm Fire & Cas. Ins. Co. of Bloomington, Ill.*, 184 P.3d 1021 (2008)).

The insured bears the burden of showing that its claim falls within the basic scope of coverage under the policy. *Travelers Cas. & Surety Co. v. Ribi Immunochem Research, Inc.*, 108 P.3d 469, 476 (2005). In turn, the insurer has the burden of proving the claim is excluded under an exclusionary clause. *Id.* Exclusions from coverage are "narrowly and strictly construed because they are contrary to the fundamental protective purpose of an insurance policy." *Id.* (*citing*

5

*Wellcome v. Home Ins. Co.*, 849 P.3d 190, 192 (1993)). In interpreting insurance contracts courts also must give terms and words in the contract their usual meaning and construe them using common sense. *Id*. "It is well established that in construing and analyzing the terms of an insurance policy we look first to the policy's plain language. In doing so we apply the 'common sense meaning as viewed from the perspective of a reasonable consumer of insurance products.'" *Monroe v. Cogswell Agency*, 234 P.3d 79, 82 (2007) (citing *Stutzman v. Safeco Ins. Co. of* America, 945 P.2d 32 (1997).

Any ambiguities in the insurance contract are construed against the insurer and in favor of extending coverage. *Revelation Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 206 P.3d 919, 929 (2009). A contract provision is ambiguous if it is "reasonably subject to two different interpretations." *Fisher ex. rel. McCartney v. State Farm Mut. Auto. Ins.*, 305 P.3d 861, 865 (Mont. 2013) (citing *Modroo v. Nationwide Mut. Fire Ins. Co.*, 191 P.2d 32 (Mont. 2008)). "Whether a provision of an insurance contract is 'reasonably susceptible to two different interpretations,' is determined from 'the viewpoint of a consumer with average intelligence, but untrained in the law or the insurance business.'" *Id.* at 865-66.

B.  Analysis

The parties do not dispute the material facts. Rather, they dispute whether Ad Design suffered a covered loss under the Policy. The Policy provides

coverages for Money and Securities, Forgery and Computer Fraud. The Policy also contains an exclusion for False Pretenses.

   *1. Policy Provisions*

The relevant coverage provisions of the Policy provide:

**A. COVERAGE**
We will pay for direct physical loss of or physical damage to Covered Property at the premises described in the Declarations (also called "scheduled premises" in this policy) caused by or resulting from a Covered Cause of Loss.
> . . .
> **2. Property Not Covered**
> > Covered Property does not include:
> > . . .
> > c. "Money," bullion, numismatic and philatelic property and bank notes or "securities" except as provided in any Additional Coverages or Optional Coverages.
> 
> . . .
> **3. Covered Causes of Loss**
> > RISKS OF DIRECT PHYSICAL LOSS unless the loss is:
> > a. Excluded in Section B., EXCLUSIONS;
> 
> . . .
> **5. Additional Coverages**
> . . .
> > **f. Forgery**
> > > (1) We will pay for loss resulting directly from forgery or alteration of any check, draft, promissory note, or similar written promises, orders or directions to pay a sum certain in "money" that you or your agent has issued, or that was issued by someone who impersonates you or your agent.
> > 
> > . . .
> > **i. Money and Securities**
> > > (1) We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee having use and custody of the

property, at the "scheduled premises," or in transit
between any of these places, resulting directly from:
(a) "Theft"
. . .

The Policy also contains several exclusions under Section B of the Policy, which are separated into 5 groups or categories. Exclusion B.2. provides in part:

**B. EXCLUSIONS**
. . .
2. We will not pay for physical loss or physical damage caused by or resulting from:
. . .
   **f. False Pretense:** Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

(Doc. 1-2.)

In addition, the Policy contains an endorsement which added the following Additional Coverage under Section A.5 of the Policy:

4. **Computer Fraud**
   The following Additional Coverage is added:
   We will pay up to $5,000 in any one occurrence for physical loss of or physical damage to "money," "securities," and other property having intrinsic value resulting directly from computer fraud. Computer fraud means any act of stealing property following and directly related to the use of any computer to fraudulently cause a transfer of that property from inside your premises or from a banking institution or similar safe depository, to a person (other than a "messenger") outside those premises or to a place outside those premises.

(Doc. 16-1 at 120.)

As noted above, both parties have moved for summary judgment on the application of the False Pretense exclusion. Ad Design maintains the exclusion does not apply; Sentinel asserts that the exclusion bars Ad Design's claim, as a matter of law.

*2. False Pretense Exclusion*

Ad Design does not dispute that it voluntarily parted with its money as contemplated by the False Pretense exclusion. Ad Design contends, however, that the False Pretense exclusion should not apply because it did not suffer a "physical loss." Ad Design points out that the money it lost was in the form of electronic funds in a bank account. Ad Design asserts that because electronic funds are intangible, it could not have suffered a "physical loss."

Sentinel counters that Ad Design improperly focuses on the form of the money rather than the nature of the loss. Sentinel asserts Ad Design in fact lost actual, physical control and possession of its money that it otherwise could have withdrawn from its bank account. Thus, Sentinel contends that because Ad Design voluntarily transferred the money under false pretenses, the False Pretense exclusion precludes coverage.

On the one hand, the Court finds Sentinel's interpretation of the Policy to be reasonable. Although Ad Design's money was held in an intangible form while in the bank, it was no less money. *See e.g. Robben & Sons Heating, Inc. v. Mid-*

9

*Century Ins. Co.*, 74 P.3d 1141, 1145 (Or. Ct. App. 2003) ("We think that the ordinary meaning of the word 'money' includes money held in a bank account subject to withdrawal by check"). Thus, the intangible funds were interchangeable with and represented what is tangible, i.e. money. "[T]hings that are interchangeable should normally be treated the same by the law. . ." *In re Oakley*, 344 F.3d 709, 713 (7th Cir. 2003). Moreover, there is a practical reality that Ad Design's loss of electronic funds was essentially the same as if Ad Design lost an equivalent amount of cash. Once the money was electronically transferred out of Ad Design's account, it was gone. Ad Design no longer had physical access to or use of the funds, the same as if a stack of bills had been handed over to the fraudsters. Accordingly, it would be reasonable to interpret the Policy to find a physical loss of money occurred based on the facts of this case.

Nevertheless, Ad Design's interpretation of the Policy is also reasonable. As Ad Design points out, there are different groups or categories of exclusions under Section B of the Policy. Under Section B.1., for example, the Policy states "We will not pay for *loss or damage* caused directly or indirectly by any of the following." (Doc. 1-2 at 48.) Similarly, under Section B.3., the Policy excludes "*loss or damage* caused by or resulting from any of the following." (*Id.* at 50. In contrast, Section B.2. excludes "*physical loss or physical damage* caused by or resulting from" certain enumerated risks, including False Pretenses. (*Id.* at 49.)

10

Consequently, the Policy makes a distinction between "loss or damage" and "physical loss or physical damage." But those terms, and how they are to be applied, are not defined in the policy. Because the terms are not defined, the Policy is confusing as to what risks are covered and what risks are excluded.

If not for the inclusion of the "physical loss" language under Section B.2., the application of the False Pretense exclusion to this case would be fairly straight forward. It appears the exclusion is otherwise tailored to what occurred here. In addition, Sentinel cites three cases in which a similar exclusion was applied in similar circumstances, and was found to be unambiguous. *See e.g. Schwet Linde & Coulson, PLLC v. Travelers Cas. Ins. Co. of Am.*, 2015 WL 3447242 (W.D. Wash. May 28, 2015); *Martin, Schudt, Wallace, Dilorenzo & Johnson v. Travelers Indem. Co. of Conn.*, 2014 WL 460045 (N.D.N.Y. Feb. 5, 2014); *Schmidt v. Travelers Indem. Co. of Am.*, 101 F.Supp.3d 768 (S.D. Ohio 2015). Like here, all of those cases involved a situation where an insured was duped into transferring funds out of their bank account. But unlike here, none of those cases involved an exclusion which required "physical loss" – they all had exclusions which applied simply to "loss or damage." *Schwet Linde & Coulson, PLLC*, 2015 WL 3447242 at *2; *Martin, Schudt, Wallace, Dilorenzo & Johnson*, 2014 WL 460045 at *1; *Schmidt*, 101 F.Supp.3d at 775. Therefore, these cases do not resolve the ambiguity presented by the Policy here.

Further, the Ninth Circuit has indicated "physical loss" means a loss of tangible property. *See Sentience Studio, LLC v. Travelers Ins. Co.*, 102 Fed.Appx. 77, 81 (9th Cir. 2004) (stating direct physical loss "means the Covered Property must be tangible; 'physical loss cannot occur in the intangible.'"). Other courts have further found that funds held in a bank account do not constitute tangible property.

For example, in *Florists' Mut. Ins. Co. v. Ludy Greenhouse Manf. Corp.*, 521 F.Supp.2d 661, 680-81 (S.D. Ohio 2007), the Court considered whether the loss of funds deposited in a bank account constituted "direct physical loss or damage" under an insurance policy. The Court held "funds deposited into a bank account do not have a 'physical' existence, and thus, are not susceptible to physical loss or damage. Based on these considerations, the Court determines that the funds in question are intangible property, not susceptible to "physical loss or damage." *See also Harvard St. Neighborhood Health Ctr., Inc. v. Hartford Fire Ins. Co.*, 2015 WL 13234578, *8 (D. Mass. Sept. 22, 2015) ("funds deposited into a bank account do not have a physical or material existence and thus, are not susceptible to 'physical loss or damage.'"); *Johnson v. Amica Mut. Ins. Co.*, 733 A.2d 977, 979 (Me. 1999) (collecting cases, and stating "Bank account funds are not 'tangible property,' because they have no physical presence. Rather, bank account funds are

12

'intangible property,' because they have no intrinsic value and merely represent, or are evidence of value.").

In light of this authority and the Policy language, it would be reasonable to interpret the Policy to find Ad Design did not suffer a "physical loss." Thus, because there are two different reasonable interpretations of the Policy, the Court finds the False Pretense exclusion is ambiguous. As such, it must construed against Sentinel. *Revelation Indus., Inc.*, 206 P.3d at 929. Accordingly, the Court will construe the Policy to mean Ad Design did not suffer a physical loss, and therefore, the False Pretense exclusion does not bar coverage.

### 3. Coverage

The Court further finds Ad Design can establish coverage under the Policy. Contrary to Sentinel's alternate argument, coverage is not limited to only physical loss or damage.

The opening paragraph of Coverage A provides that Sentinel will pay for "direct physical loss of or physical damage to Covered Property at the premises described in the Declarations. . . ." (Doc. 1-2 at 33.) The Additional Coverages in Section A.5., however, expand this coverage. For example, some of the Additional Coverages apply only to claims for "direct physical loss," whereas others, such as the Forgery and Money and Securities provisions, apply to all types of loss related to the type of claim listed. *Compare* Section A.5.a ("Collapse . . . we will pay for

*direct physical loss or physical damage* caused by . . .") *and* Section A.5.c. ("Equipment Breakdown . . . We will pay for *direct physical loss or physical damage* caused by . . .") *with* Section A.5.f. ("Forgery . . . We will pay for *loss resulting directly from*") *and* Section A.5.i. ("Money and Securities . . . We will pay for *loss of 'money'* . . ."). (Doc. 1-2 at 35-44.) The additional coverages also expand coverage to losses which occur outside the insured's premises. The Money and Securities provision, for example, extends coverage from the insured's premises to money located "at a bank or savings institution, within your living quarters . . . or in transit between any of these places . . . ." (*Id.* at 39.) Accordingly, Ad Design's claim is covered under the Additional Coverages even if it is construed to be a non-physical loss.

The Court finds Ad Design's loss is covered under the Money and Securities provision. The Money and Securities provision covers the theft of money on deposit at a bank. (Doc. 1-2 at 39.) That is precisely what occurred here. The Policy defines theft broadly as "the act of stealing." (*Id.* at 57.) Thus, a theft by fraud or false pretense is covered, unless it is expressly excluded. *See e.g. Great N. Ins. Co. v. Dayco Corp.*, 620 F.Supp. 346, 351 (S.D.N.Y 1985) ("Absent an express exclusion in the policy, a theft by trick or false pretense would be covered."). Here, as discussed, the False Pretense exclusion does not apply. Ad Design's loss is, therefore, covered.

The Court also finds the loss is covered under the Forgery provision. That clause states "[w]e will pay for loss resulting directly from . . . directions to pay a sum certain in 'money' . . . that was issued by someone who impersonates you or your agent." (Doc. 1-2 at 38.) Here, four emails were sent directing Ms. Logulo to transfer $31,832.00, $24,376.00, $28,746.00, and $30,642.00, respectively, to a specified account by wire transfer. The Court finds this constitutes a "direction[] to pay a sum certain in money." Although the emails appeared to be from Ad Design's president, they were actually issued by someone who was impersonating him. Therefore, the directions were "issued by someone who impersonates you or your agent." Based on a plain reading of the Forgery provision, the Court finds Ad Design's loss is covered.

The Court determines there is no coverage, however, under the Computer Fraud provision because that clause expressly requires a physical loss. Ad Design's position is that it did not suffer a physical loss in connection with the False Pretense exclusion. It cannot have it both ways, and maintain that it did suffer a physical loss for purposes of the Computer Fraud provision.

   4. *Covered Loss*

Having found there is coverage for Ad Design's loss under the Money and Securities and Forgery provisions, the final issue is to determine the amount Ad Design is entitled to recover under the Policy. Ad Design argues the Court should

15

issue an order declaring the Policy covers its loss in the aggregate amount of $115,596.00. The Court disagrees.

Ad Design argues that it is entitled to recover the full amount of its loss because Sentinel breached the insurance agreement. Ad Design has not pled a breach of contract cause of action, but rather seeks declaratory relief. The Complaint only seeks a declaration that the Policy provides coverage, and for judgment that Sentinel is obligated to pay benefits according to the term and conditions of the policy. (Doc. 16 at 3.) Accordingly, Ad Design is entitled only to such coverage as the Policy provides.

The Policy provides that Ad Design is entitled to $10,000.00 for each occurrence under the Money and Securities Provision and $5,000.00 for each occurrence under the Forgery provision. (Doc. 1-2 at 12, 38-39.) The Money and Securities provision states "[a]ll loss: (a) [c]aused by one or more persons; or (b) [i]nvolving a single act or series of related acts; is considered one occurrence." (*Id.* at 39.) Occurrence is not defined under the Forgery provision.

Ad Design asserts there were four separate thefts of its money, and therefore there were four occurrences under the Policy. Sentinel argues the four transfers of electronic funds are a series of related acts, and thus constitute just a single occurrence. The Court notes, however, that neither party has addressed existing Montana law on determining the number of occurrences covered by an insurance

16

policy.  *See e.g. Heggem v. Capitol Indem. Corp.*, 154 P.3d 1189, 1195 (Mont. 2007) (finding the term occurrence should be viewed from the perspective of causation, meaning the term refers to "the cause or causes of the damage or injury – and not the number of injuries or claims").  The Court also notes there are analogous cases involving multiple losses from theft or employee embezzlement, which generally hold theft over a period of time constitutes one occurrence.  *See e.g. Madison Mat. Co. Inc. v. St. Paul Fire & Marine Ins. Co.*, 523 F.3d 541 (5th Cir. 2008); *Underwood Fruit & Warehouse Co. v. Nationwide Agribusiness Ins. Co.*, 2008 WL 11335115 (E.D. Wash. Aug. 8, 2008); *Florists' Mut. Ins. Co. v. Gradco, Inc.*, 2009 WL 10687753 (N.D. Ala. April 23, 2009); *Patterson v. Am. Econ. Ins. Co.*, 710 Fed.Appx. 762 (9th Cir. 2017); *Budway Enters., Inc. v. Fed. Ins. Co.*, 2009 WL 1014899 (C.D. Cal. April 14, 2009).

The Court finds that because the briefing on this aspect of the case was not fully developed, the parties should be given an opportunity to address the occurrence issue in light of the Court's decision on the coverage issues and the case law identified above.  Further, the issues of prejudgment interest and attorneys' fees and costs remain to be addressed before judgment can be entered.  Accordingly, further briefing is necessary on these outstanding issues.

In sum, the Court has determined Ad Design is entitled to recover under the Money and Securities Provision and the Forgery Provision.  The unresolved

question the parties are directed to address is whether Ad Design's loss is a single occurrence, and thus Ad Design may only recover $15,000.00, or if the loss is comprised of four separate occurrences, and thereby Ad Design would be entitled to $60,000.00 under the Policy. The parties shall also submit briefing on whether reasonable attorneys' fees, costs and prejudgment interest are recoverable.

### III. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Ad Design's Motion for Summary Judgment (Doc. 17) is **GRANTED in part**,

2. Sentinel's Cross Motion for Summary Judgment (Doc. 31) is **DENIED in part**.

3. Ad Design shall file a supplemental brief addressing the issues outlined above by **October 24, 2018**. Sentinel shall file a responsive supplemental brief by **November 7, 2018**. No reply brief shall be filed.

**IT IS ORDERED**.

DATED this 26th day of September, 2018.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge